UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CRANETECH, INC.,

    Plaintiff,

    v.

RICHARD SLACK, et al.,

    Defendants.

Case No. 3:24-CV-693-GSL-SJF

## ORDER

Before the Court are two motions: Plaintiff CraneTech's Motion for Temporary Restraining Order and Preliminary Injunction, [DE 2], and Defendants' Motion to Dismiss, [DE 26]. Having reviewed the briefing on both the Motion to Dismiss, and the Motion for Preliminary Injunction, and having considered testimony from the hearing, the Court finds as follows.

## BACKGROUND

Plaintiff CraneTech is a crane-servicing company. In 2022, Plaintiff CraneTech approached Defendants, Richard and Lisa Slack, with a proposal to purchase their crane-servicing business, R.L.W.P Service, LLC ("RLWP"), located in Valparaiso, Indiana. [DE 1, at 3]. Plaintiff CraneTech provided similar services as RLWP, and the "acquisition of RLWP offered CraneTech an important opportunity to establish itself in northern Indiana…" [*Id*. at 4]. Plaintiff CraneTech identified RLWP based on "its footprint in the greater Valparaiso, Indiana area and the customer base its principals, the Slacks, had built." [*Id*.]

On November 10, 2022, Plaintiff CraneTech entered into the Asset Purchase Agreement ("APA") to purchase RLWP's assets from Defendants. [*Id*.] To protect the customer and

employee relationships that Plaintiff CraneTech was acquiring, the APA included restrictive covenants prohibiting certain activity by Defendants. [*Id.* at 5]. The APA Restrictive Covenants ran for two years from the APA's closing date, from November 10, 2022 through November 10, 2024. [*Id.* at 6].

In addition to purchasing RLWP from Defendants, because the crane servicing industry is highly interpersonal, Plaintiff CraneTech also wanted to bring on Defendants as employees. [*Id.* at 4]. Defendants executed their employment agreements, which also contained restrictive covenants, on November 10, 2022. [*Id.* at 6]. Defendant Lisa Slack joined Plaintiff CraneTech as the Branch Administration Manager; Defendant Richard Slack joined CraneTech as a Branch Manager, and was later promoted to District Manager. [*Id.* at 6; 8]. Over the next year and a half, the employment relationship with Defendant Richard Slack soured, and both Defendants were terminated on May 10, 2024. [*Id.* at 10]. This lawsuit ensued.

Plaintiff CraneTech filed a Motion for a Temporary Restraining Order and Preliminary Injunction, at [DE 2], and alleged that Defendant Richard Slack violated the restrictive covenants contained in the APA and Employment Agreements by starting a competing crane-servicing business, and attempting to and succeeding in poaching Plaintiff CraneTech's employees and customers. [DE 3, Page 5]. After reviewing the Motion, the Court granted the Temporary Restraining Order at [DE 6], and set the Preliminary Injunction for hearing.

In the early hours before the Preliminary Injunction hearing occurred, Defendants filed a Motion to Dismiss for want of jurisdiction. [DE 26]. The Court did not entertain argument on the substantive aspects of the Motion at the hearing, and instead, the Motion to Dismiss was fully briefed on paper with Plaintiff CraneTech responding at [DE 34], and Defendants replying at [DE 36].

At the Preliminary Injunction hearing, there was very little substantive discussion of the elements required for a preliminary injunction to issue and how those elements are satisfied in this case.[1] There was even less, if any at all, discussion of the enforceability of the restrictive covenants in either contract, which the Court finds interesting, because the enforceability of the restrictive covenants is a threshold issue and part of the analysis of whether there is a likelihood of success on the merits. *See Advent Elecs. v. Buckman*, 1995 U.S. Dist. LEXIS 11696, at *12-13 (N.D. Ill. Aug. 11, 1995); *Custom Truck One Source, Inc. v. Norris*, 2022 U.S. Dist. LEXIS 34291, *17-18 (N.D. Ind. Feb. 28, 2022). Instead, the full-day hearing was focused almost exclusively on the conduct of Defendant Richard Slack after his employment with Plaintiff CraneTech ended.

At the conclusion of the hearing, the parties agreed that the TRO would be extended through and including the date of the Court's ruling, and the Court permitted limited briefing on the merits of the Motion for Preliminary Injunction. [DE 33, Page 280]. Plaintiff CraneTech filed their Brief in Support at [DE 35]. Defendants responded at [DE 38], with Plaintiff CraneTech replying at [DE 43].

As an initial starting point, the Court notes that even after this additional opportunity for briefing, there remain issues which the parties fail to address. First, the Asset Purchase Agreement and the Employment Agreement, signed on the same day, by the same parties, during the same transaction, contain conflicting choice of law and forum selection provisions. [DE 1-1, Pages 29, 59]. This is problematic, because employment law varies from state to state and greatly impacts the enforceability of restrictive covenants. Despite there being conflicting choice of law and forum selection provisions, the parties did not take particular care to provide this Court with

---

[1] The transcript of the Preliminary Injunction hearing is available at [DE 33].

appropriate, relevant caselaw. For this reason, the Court spent an inordinate amount of time both identifying the controlling law, and applying it to the facts of this case. *See DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."). Having reviewed the briefing on both the Motion to Dismiss, and the Motion for Preliminary Injunction, and having considered testimony from the hearing, the Court's analysis is below.

### Defendants' Motion to Dismiss: [DE 26]

Defendants argue that because the forum selection clause requires actions arising under the APA to be brought exclusively in the state or federal courts of Illinois that this Court lacks subject matter jurisdiction and must dismiss the APA-related count. [DE 27]. This Court disagrees.

The appropriate way to enforce a forum-selection clause which requires suit in a specific federal forum, like here, is through a motion to transfer under 28 U.S.C. § 1404(a), not a motion to dismiss under Rule 12(b)(1). *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) (quoting *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 579 (2013)). In a similar case in this division, *H.E.D., Inc. v. Konica Minolta*, the court denied a Rule 12(b)(1) motion to dismiss based on a forum-selection clause for failure to "address[] the questions pertinent to" transfer under § 1404(a). 2016 U.S. Dist. LEXIS 130987, at *4-5 (N.D. Ind. Sept. 26, 2016). It would appear, based on *H.E.D., Inc.,* that Defendants' choice to move under Rule 12(b)(1) instead of through a motion to transfer under 28 U.S.C. § 1404(a) is sufficient grounds

to deny their motion, because they failed to provide the Court with the necessary information to "address[] the questions pertinent to" transfer under § 1404(a).[2] *Id.*

Notwithstanding, a forum selection clause does not divest a court of jurisdiction over a party where it otherwise exists. While personal jurisdiction is a right that a litigant may waive or forfeit through a forum selection clause, litigants cannot confer subject-matter jurisdiction by agreement or omission. *BouMatic, LLC v. Idento Operations*, BV, 759 F.3d 790, 793 (7th Cir. 2014). Because forum selection clauses allow parties to stipulate to personal jurisdiction only, the Asset Purchase Agreement's forum selection clause has no bearing on this Court's subject-matter jurisdiction. Defendants' Motion to Dismiss is DENIED.

### Plaintiff CraneTech's Motion for Preliminary Injunction: [DE 2]

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Zimmer US, Inc. v. Miller*, 2023 U.S. Dist. LEXIS 98152, at *5 (N.D. Ind. June 6, 2023) (quoting *Winter v. NRDC, Inc.,* 555 U.S. 7, 24 (2008) (internal citations omitted)). To obtain a preliminary injunction, a plaintiff must make four showings: (1) without this relief it will suffer irreparable harm; (2) traditional legal remedies would be inadequate; (3) it has some likelihood of prevailing on the merits of its claims; and (4) that the balance of harms weighs in favor of granting the injunction. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018)). If the plaintiff is likely to prevail on

---

[2] While at one point it was appropriate procedure within this Circuit to use the dismissal mechanism of 12(b)(3) to enforce a forum selection clause, this Court is unfamiliar with the practice of utilizing 12(b)(1) to do so. Prior to the Supreme Court's decision in *Atlantic Marine*, the rule was that a motion to dismiss based on a contractual forum-selection clause must be brought pursuant to Rule 12(b)(3). *Contract Servs. Grp., LLC v. E&E Mfg. of Tenn., LLC*, 2023 U.S. Dist. LEXIS 53749, at *9-10 (N.D. Ind. Mar. 29, 2023); *see Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). In *Atlantic Marine*, the Supreme Court held that a motion to dismiss under Rule 12(b)(3) is not the correct procedure to enforce a forum-selection clause because 12(b)(3) refers to dismissal for "improper venue" and whether venue is proper is to be determined solely by reference to the federal venue statute, 28 U.S.C. § 1391. *Atl. Marine*, 571 U.S. at 52-55.

the merits, the balance of harms need not weigh as heavily in her favor. *Speech First*, 968 F.3d at 637 (quoting *Courthouse News,* 908 F.3d at 1068). If the plaintiff cannot establish both a likelihood of success on the merits and that he will suffer irreparable harm absent the injunction, "then the district court's analysis ends and the preliminary injunction should not be issued." *Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998) (citing *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)).

Before reaching the elements, the Court must address the Asset Purchase Agreement and the Employment Agreement, which were executed on the same day, by the same parties, during the same transaction, and contain extremely similar restrictive covenants. [DE 1-1, Pages 29, 59]. The Asset Purchase Agreement, and restrictive covenants contained within, went into effect on the day it was signed and remained in effect for two years, from November 10, 2022 until November 10, 2024. [DE 1, Page 6]. The restrictive covenants contained in the Employment Agreement were to go to into effect on the day employment terminated, here, on May 10, 2023, and were effective for three years, until May 10, 2026. [*Id.* at Pages 6-7]. Therefore, from May 10, 2023 to November 10, 2024, the restrictive covenants of both agreements, which again are extremely similar, were in effect and Defendants' behavior would have violated both agreements at once. Despite this, and despite the facts that the Asset Purchase Agreement and the Employment Agreement were executed on the same day, by the same parties, during the same transaction, and contain extremely similar restrictive covenants, the forum selection clauses in the two agreements do not match. [DE 1-1, Pages 29, 59].

The forum selection and choice of law provisions in the Asset Purchase Agreement specify Illinois courts and Illinois law. [DE 3-1, Page 33]. The forum selection and choice of law provisions in the Employment Agreement specify Indiana courts and Indiana law. [*Id.* at 62].

Plaintiff CraneTech is a California corporation with its principal place of business in California. [DE 1, Page 2]. RLWP, the branch Plaintiff CraneTech purchased from Defendants, was located in Valparaiso, Indiana and served the northwest Indiana region. [*Id.* at 3]. The importance of Illinois law and Illinois courts for disputes arising under the APA is unclear to this Court.

Notably, the Employment Agreement contains a provision with superseding language.

> This Agreement constitutes the entire agreement between the Parties hereto with respect to the subject matter hereof and supersedes any and all prior discussions, negotiations, proposals, undertakings, understandings, and agreements, whether written or oral, with respect to such subject matter. All such prior agreements, understandings and arrangements for the provision of services by Employee to the Company and the compensation of Employee in any form are hereby terminated in all respects, and Employee hereby releases and forever discharges the Company and its affiliates from any and all liabilities and obligations of any nature arising out of or in connection with any and all such prior agreements, understandings or arrangements.

[DE 3-1, Page 63]. The Asset Purchase Agreement does not contain such a clause, and instead contains language allowing it to be modified or superseded by such measure:

> This Agreement may be amended, modified, superseded, or cancelled, and any of the terms, covenants, representations, warranties, or conditions hereof may be waived, only by a written instrument executed on behalf of all of the parties hereto or, in the case of a waiver, by the party waiving compliance.

[DE 3-1, Page 33]. Because the agreements were signed on the same day, and only the Employment Agreement contains signature time-stamps, it is unclear to the Court if one agreement was signed after the other and was actually intended to supersede the other for the purposes of reconciling the choice of law provisions and forum selection clauses.

Here, neither party makes any argument that the forum selection or choice of law provisions were obtained by fraud. Nor does any party argue that one clause or the other should be enforced as to both agreements. As explored more fully above, Defendants requested that the

claims arising under the APA be dismissed so the claims may be brought in Illinois courts applying Illinois law, in accordance with the APA's forum selection clause. [DE 27]. This Court declined to do so. Instead, because the claims arising under the APA and Employment Agreement involve the same parties and issues, this Court will keep the claims arising under the APA within its jurisdiction, but, in accordance with its choice of law provision, will analyze those claims under Illinois law. The claims arising under the Employment Agreement will be analyzed under Indiana law in accordance with its choice of law provision.[3]

I.    **The Restrictive Covenants in the Employment Agreement**

a. **Likelihood of Success on the Merits: Legal Standards under Indiana Law**

The substantive law governing the restrictive covenants in the Employment Agreement is Indiana law. The reasonability, and therefore enforceability, of the restrictive covenants is a question of law for the court to decide. *Prod. Action Int'l, Inc. v. Mero*, 277 F. Supp. 2d 919, 924 (S.D. Ind. 2003) (citing *Licocci v. Cardinal Associates, Inc.*, 445 N.E.2d 556, 561 (Ind. 1983) (citations omitted)). Indiana law disfavors non-competition agreements as restraints on trade. *Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 729 (Ind. 2008) (citing *Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 687 (Ind. 2005)). Covenants not to compete are enforceable if they are reasonable. *Zollinger v. Wagner-Meinert Eng'g, LLC*, 146 N.E.3d 1060, 1066 (Ind. Ct. App. 2020) (citing *Dicen*, 839 N.E.2d at 687) The manner in which reasonableness is determined

---

[3] "It is well recognized that a federal district court has the inherent power to administer its docket in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases." *Pyrolyx United States Ind. v. Zeppelin Sys. Gmbh*, 2020 U.S. Dist. LEXIS 123437, at *8-9 (S.D. Ind. Jul. 14, 2020) (citing *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1212-13 (N.D. Ill. 1983)) (citations omitted). "As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

depends on the context in which the covenant was established. *Zollinger*, 146 N.E.3d at 1066

(citing *Dicen*, 839 N.E.2d at 687).

Viewed skeptically, these covenants are construed "strictly against the employer" even if

deemed a reasonable restriction. *Latitude Serv. Co. v. Reese*, 2024 U.S. Dist. LEXIS 177093, at

*48-50 (N.D. Ind. Sept. 30, 2024) (citing *Clark's Sales & Serv., Inc. v. Smith*, 4 N.E.3d 772, 780

(Ind. Ct. App. 2014)). Covenants not to compete ancillary to the sale of a business, however, are

reviewed more liberally than employment-based covenants. *Dicen*, 839 N.E.2d at 687. Quoted

by the Supreme Court of Indiana, a Massachusetts court explained the policies distinguishing

employment-based non-competes from non-competes ancillary to sale of business as follows:

> In the former situation there is more likely to be equal bargaining
> power between the parties; the proceeds of the sale generally enable
> the seller to support himself temporarily without the immediate
> practical need to enter into competition with his former business;
> and a seller is usually paid a premium for agreeing not to compete
> with the buyer. Where the sale of the business includes good will . .
> . a broad noncompetition agreement may be necessary to assure that
> the buyer receives that which he purchased . . . . On the other hand,
> an ordinary employee typically has only his own labor or skills to
> sell and often is not in a position to bargain with his employer.

*Dicen*, 839 N.E.2d at 687 (quoting *Alexander & Alexander, Inc. v. Danahy*, 488 N.E.2d 22, 28

(Mass. App. Ct. 1986) as having quoted in *Fogle v. Shah*, 539 N.E.2d 500, 502 (Ind. Ct. App.

1989)). "Despite these differences, both employment covenants and sale of a business covenants

are still reviewed under a reasonableness standard." *Dicen*, 839 N.E.2d at 687 (citing *Young v.

Van Zandt,* 449 N.E.2d 300, 304 (Ind. Ct. App. 1983)).

In the employment context, the employer bears the burden to show "that it has a

legitimate interest to be protected by the agreement," and that "the agreement is reasonable in

scope as to the time, activity, and geographic area restricted." *Cent. Ind. Podiatry*, 882 N.E.2d at

729. A legitimate protectable interest is "an advantage possessed by an employer, the use of

which by the employee after the end of the employment relationship would make it unfair to allow the employee to compete with the former employer." *Distrib. Serv. v. Stevenson*, 16 F. Supp. 3d 964, 970 (S.D. Ind. 2014) (quoting *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 913 (Ind. Ct. App. 2011)).

Indiana courts have adopted the "blue pencil" doctrine. This doctrine allows a court to delete unreasonable restrictions from an otherwise enforceable covenant if the restrictions are severable, and to enforce the reasonable restrictions. *JAK Productions, Inc. v. Wiza*, 986 F.2d 1080, 1087 (7th Cir. 1993) (citing *Young*, 449 N.E.2d at 304). *See Licocci*, 445 N.E.2d at 561. "Where the covenant is both unreasonable and incapable of redaction, it will be unenforceable." *Young*, 449 N.E.2d at 304. And, a covenant will not be enforced if its enforcement would be unreasonable under any set of facts. *Prod. Action Int'l, Inc. v. Mero*, 277 F. Supp. 2d 919, 923 (S.D. Ind. 2003) (citing *Young*, 449 N.E.2d at 304).

Although the parties appear to have attempted to confer courts with authority to rewrite the terms of the restrictive covenants if found to be overbroad, [DE 3-1, Page 30], in Indiana, courts have refused to revise contracts beyond the reach of the blue pencil doctrine. *AL-KO Axis, Inc. v. Revelino*, 2013 U.S. Dist. LEXIS 203738, at *20 (N.D. Ind. Oct. 25, 2013). In *Sharvelle v. Magnante*, 836 N.E.2d 432, 439 (Ind. Ct. App. 2005), the contract at issue stated that if a court found any provision to be overbroad, "the invalid or unreasonably broad provision shall be deemed deleted or modified to the minimum extent necessary to permit enforcement of all remaining provisions." *AL-KO Axis, Inc.*, 2013 U.S. Dist. LEXIS 203738, at *20. The party seeking enforcement of the restrictive covenant argued that this provision allowed the court to modify the contract rather than simply delete offending provisions; the court disagreed. *Id.* at 20-21. "[A]gain, when we apply the blue pencil, we will not add terms that were not originally part

of the agreement. . . Such a modification would require us to add a term that was not originally part of the agreement, which we will not do." *Id*. at 21; *see also Prod. Action Int'l*, 277 F. Supp. 2d at 929 (predicting that the Indiana Supreme Court would not permit parties to contract around the blue pencil doctrine).

### b. Application of Indiana Law to the Restrictive Covenants in the Employment Agreement

Defendants first argue that the restrictive covenants in the Employment Agreement are unenforceable for lack of consideration. [DE 38, Page 25-27]. The language of the section discussing consideration in the Employment Agreement is below.

> In addition to the Base Salary detailed above in Section 3.1 of this Agreement, the Company hereby offers and agrees to provide Employee with the Target Bonus as described in Section 3.2 and the grant of Synthetic Equity Units as detailed above in Section 3.3, in exchange for Employee agreeing to be bound by the Restrictive Covenants contained herein this Section 6. The grant of Synthetic Equity Units is in addition to the other consideration offered by the Company in exchange for Employee agreeing to be bound by the terms and conditions of this Agreement, including but not limited to the Company's offer of employment and/or continued employment, Employee's receipt of or access to the Company's Confidential Information or Trade Secrets, and the other mutual benefits and promises conferred herein, the receipt and sufficiency of such consideration is hereby acknowledged.

[DE 3-1, Page 59]. Defendants' main contention is that Defendant Richard Slack never received the target bonus or value for synthetic equity units. [DE 38, Page 25-27]. Plaintiff CraneTech responds that under Indiana law "the promise to continue employment and to pay certain compensation" is sufficient consideration for Defendant Richard Slack's agreement to abide by the terms of the Employment Agreement restrictive covenants. [DE 43, Page 15].

Consideration consists of any bargained-for exchange. *B-Dry Owners Ass'n v. B-Dry System, Inc.,* 636 N.E.2d 161, 163 (Ind. App. 1994). The consideration requirement is satisfied if

there is "a benefit accruing to the promisor or a detriment to the promisee." *Id.* Under Indiana law, a court does not inquire into the adequacy of consideration, and an exchange of mutual promises is consideration which supports modification of a contract. *Wilkinson v. Sheets*, 2021 U.S. Dist. LEXIS 232809, *15 (N.D. Ind. Dec. 6, 2021) (citing *Hamlin v. Steward*, 622 N.E.2d 535, 539 (Ind. Ct. App. 1993)).

Here, in return for adhering to the restrictive covenants and foregoing certain, specific behavior, Defendant Richard Slack received, at a minimum, his base salary. [DE 3-1, Page 59]. This is sufficient to satisfy the consideration requirement under Indiana contract law. *See B-Dry Owners Ass'n,* 636 N.E.2d at 163. Although Plaintiff CraneTech's alleged nonpayment of the target bonus and synthetic equity units might have constituted the first breach, therefore rendering the employment agreement completely unenforceable, Defendants only argue that the consideration is illusory; as the Court has explained, that is not so.

Moving to enforceability, whether the Employment Agreement's restrictive covenants are reasonable is a question of law for the court to decide. *Prod. Action Int'l*, 277 F. Supp. 2d at 924. Plaintiff CraneTech argues it has a legitimate business interest in protecting existing and prospective customer relationships, and the goodwill resulting from these relationships. [DE 35, Page 15]. Likewise, Plaintiff CraneTech argues there is a legitimate business interest in protecting its relationships with its independent contractors and employees. [*Id.*]. The Court agrees with both.

Legitimate business interests include the protection of customer goodwill. *Coates,* 942 N.E.2d at 913. *See Cent. Ind. Podiatry*, 882 N.E.2d at 729 (Indiana courts have held that the advantageous familiarity and personal contact which employees derive from dealing with an employer's customers are elements of an employer's good will and are a protectible interest

which may justify a restraint) (citations omitted). And, in industries where personal contact between the employee and the customer is especially important due to the similarity in product offered by the competitors, the advantage acquired through the employee's representative contact with the customer is part of the employer's goodwill. *Clark's Sales & Serv. v. John D. Smith & Ferguson Enters.,* 4 N.E.3d 772, 781 (Ind. Ct. App. 2014) (citing *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 173 (Ind. Ct. App. 2008).

Although Plaintiff CraneTech appears to have legitimate protectible interests to support the Employment Agreement in restrictive covenants in Sections (a)-(c), the Court must now consider whether the restrictive covenants contained in the employment agreement are reasonable. The language of the restrictive covenant is below.

> During Employee's employment with the Company and for a period of three (3) years following the termination of Employee's employment with the Company (for any reason), Employee shall not, directly or indirectly, for himself or on behalf of any other Person, (a) solicit, induce or attempt to employ or enter into any contractual arrangement with any present or former employee or independent contractor of the Company for which the Company has a legitimate protectable interest, unless such employee, former employee, or independent contractor has not worked for or with the Company for a period in excess of eighteen (18) months, (b) call on or solicit any of the actual or targeted prospective customers of the Company or accept inbound work from any of the actual or targeted prospective customers of the Company to perform work similar to that which the Company performs, nor shall Employee disclose or use any information relating in any manner to the Company's trade or business relationships with such customers, (c) induce or attempt to induce any employee, consultant, independent contractor, or agent of the Company, for which the Company has a legitimate protectable interest, to leave the employ or otherwise cease to perform services for the Company or its affiliates, or in any way interfere with the relationship between the Company (or any of its affiliates) and any such employee, consultant, independent contractor, or agent, and/or (d) disparage, criticize, or make any negative or uncomplimentary statements or induce others to disparage, criticize, or make any negative or uncomplimentary statements regarding or with respect to the Company or any of its

> affiliates, or otherwise engage in any conduct that is injurious to the Company's reputation or interests or the good morale of employees of the Company.

[DE 3-1, Page 59].

The Court will begin with the temporal limitation, which is three years. Plaintiff CraneTech cites *Dicen* in support of the three-year restrictive covenant, arguing that because the Indiana Supreme Court upheld a five-year restrictive there, this three-year restrictive covenant is reasonable.[4] [DE 3, Page 21; DE 35, Page 16]. Defendants respond that *Dicen* is not analogous, because the defendant there oversaw sales and marketing and regularly interacted with customers. [DE 38, Page 33].

The Court agrees with Defendants, in-part. The Court agrees that there is no evidence Defendant Lisa Slack had regular communication with customers as the branch administration manager. Plaintiff CraneTech described her duties, as one would expect based on her title, in administrative terms: Defendant Lisa Slack tracked payables, billed customers, and managed vendors for the branch. [DE 1, Page 8]. The time limit of three-year restrictive covenant as to Defendant Lisa Slack appears too long. Because the employee-solicitation covenant is unreasonable as to duration, the Court may apply the "blue pencil" doctrine. *See JAK Productions, Inc.*, 986 F.2d at 1087. The blue pencil doctrine holds that if a contractual covenant contains both reasonable and unreasonable restrictions, the unreasonable portions may be severed from the remainder and the reasonable restrictions may be enforced. *Id.* However if the

---

[4] Of note, the employee-solicitation restrictive covenant in the Asset Purchase Agreement, which has similar language and was executed on the same day, during the same transaction, by the same parties, is only two years in length. [DE 1-1, Page 29].

"covenant is both unreasonable and incapable of redaction, it will be unenforceable." *Young*, 449 N.E.2d at 304.

Here, if the three-year duration is stricken, the employee-solicitation restrictive covenant has no time length, at all, and would be enforceable in perpetuity. As in *Young*, it would appear the employee-solicitation restrictive is both unreasonable and incapable of redaction, and therefore, it cannot be enforced. *Id.* The restrictive covenants in the Employment Agreement are unenforceable as to Defendant Lisa Slack. By contrast, Defendant Richard Slack joined CraneTech as a Branch Manager, and was later promoted to District Manager. [DE 1, Pages 6; 8]. Because there is evidence that he was in touch with customers, three years is reasonable. [*Id.* at 8; DE 33, Page 90].

Turning to the activity prohibitions, and focusing on Defendant Richard Slack, the Court will first focus on the employee solicitation clauses in sections (a) and (c). Defendant Richard Slack is prohibited from soliciting, attempting to employ, or entering any contract with any current employee of Plaintiff CraneTech, or anyone who has been employed by Plaintiff CraneTech within the last 18 months, for which Plaintitff CraneTech has a legitimate protectable interest. [DE 1-1, Page 59]. Defendant Richard Slack is also prohibited from inducing or attempting to induce any employee, for which Plaintiff CraneTech has a legitimate interest in, to leave the company or otherwise stop performing services for them *Id.*

The activity restrictions on the ability to divert employees in sections (a) and (c) appear to this Court to be reasonable. In determining whether a restrictive covenant reasonably limits activity by a current or former employee, the key inquiry is whether the restriction only extends far enough to protect the company's legitimate business interests. *Zimmer US, Inc. v. Miller*, 2023 U.S. Dist. LEXIS 98152, at *11 (N.D. Ind. June 6, 2023). Here, the restrictions are

reasonable because they directly protect Plaintiff CraneTech's legitimate business interest of protecting relationships with employees and not being forced into unfair competition with its rivals. *Id.*

Focusing now on Section (b), the activities restricted in that section— directly or indirectly calling-on, soliciting, or accepting work— appears to be reasonable. [DE 1-1, Page 59]. However, the class of people to which the prohibition applies— "actual or targeted prospective customers" —is not. "Targeted prospective customers" is not defined within the Employment Agreement or the Asset Purchase Agreement, or elsewhere that this Court can find. Even more problematic, there appears to be no geographic limit to the restrictions in this Section.

Indiana courts have struck down covenants not to compete that lack geographic limitations. *William Bodemer & Innovative Bev. v. Swanel Bev.,* 884 F. Supp. 2d 717, 730 (N.D. Ind. 2012). *See Vukovich v. Coleman,* 789 N.E.2d 520, 526 (Ind. Ct. App. 2003). Notwithstanding, the Court will address *E.T. Products*, which Plaintiff CraneTech cites for the proposition that a limitless geographic scope is reasonable here, because a "correspondingly broader geographic restriction may be necessary" for businesses with a national scope. [DE 35, Page 17]; *see E.T. Products, LLC v. D.E. Miller Holdings, Inc.*, 872 F.3d 464, 469 (7th Cir. 2017).

There, the court was tasked with analyzing a restrictive covenant for reasonability and enforceability, and found that under Indiana law, businesses are characterized as one of three types for the purposes of evaluating a noncompete: service businesses, distributors of goods, and manufacturers. *E.T. Prods., LLC.*, 872 F.3d at 468 (citing *Fogle*, 539 N.E.2d at 503). The court found that the noncompete restrictions in service businesses "normally will be localized because services generally are performed within a small geographic area." *E.T. Prods., LLC.*, 872 F.3d at

16

468 (citing *Fogle*, 539 N.E.2d at 503). On the other hand, a company like E.T. Products, which manufactured and distributed goods, may be expected to reach customers over a larger map, and therefore a correspondingly broader geographic restriction may be necessary. *E.T. Prods., LLC*., 872 F.3d at 468 (citing *Fogle*, 539 N.E.2d at 503).

Here, Plaintiff CraneTech makes no argument that it is a manufacturer or distributor. In fact, throughout the litigation Plaintiff CraneTech has referred to and described itself as a services company. During the Preliminary Injunction hearing, Mr. Factor stated, "…we're not in the crane business. We're in the technician business." [DE 33, Page 228]. He then outright asserted, "…we're a service company." [*Id*.] Plaintiff CraneTech is not the type of manufacturer or distributor of goods contemplated in *E.T. Products*. Therefore, the restrictive covenants for Plaintiff CraneTech, a services company, would normally be expected to be "localized because services generally are performed within a small geographic area." *E.T. Prods., LLC*., 872 F.3d at 468 (citing *Fogle*, 539 N.E.2d at 503).

Moreover, Plaintiff CraneTech has not provided this Court with any argument as to why a restrictive covenant without geographic limitation is necessary for the protection of their legitimate interests. The Asset Purchase Agreement, signed on the same day during the same transaction as the Employment Agreement, contains restrictive covenants which have a 200-mile limitation. And, in Mr. Factor's own Declaration, [DE 1-1, Page 8], he stated "… interpersonal relationships with customers are key to securing and maintaining its market positions in its business, particularly in *northern Indiana*." (emphasis added). He continued, "CraneTech had identified RLWP based on its footprint in the greater Valparaiso, Indiana area and the customer base its principals, the Slack[s], had built." [*Id*. at Page 3]. It is unclear why a much larger

geographic scope without limit is necessary for the restrictive covenants in the Employment Agreement. The geographic scope without limit appears to be overbroad.

Beyond this, the Court is not persuaded by the argument that the restrictive covenant's limitations to actual and "targeted prospective" customers serve as a geographic restrictions. "Targeted prospective customer" is not defined in the Employment Agreement or the Asset Purchase Agreement. Plaintiff CraneTech argues "targeted" modifies "prospective customer," which "helps define the term by indicating that [Plaintiff] took some action to engage or solicit this prospective customer." [DE 43, Page 13]. Plaintiff CraneTech further argues that this demonstrates that a definitive list can be created and used as the basis for a reasonable restriction in lieu of a literal geographic restriction.

The Court agrees, generally, that where "a covenant not to compete contains a restraint which clearly defines a class of persons with whom contact is prohibited, the need for a geographical restraint is *decreased*." *Prod. Action Int'l, Inc.*, 277 F. Supp. 2d at 925 (citing *Field v. Alexander & Alexander*, 503 N.E.2d 627, 635 (Ind. Ct. App. 1987), and *Seach v. Richard Slacks, Dieterle & Co.*, 439 N.E.2d 208, 213 (Ind. App. 1982) (emphasis added)). The problem here is that the limiting phrase "targeted prospective customer" does not clearly define the class of persons with whom contact is prohibited. It would appear that Plaintiff CraneTech's own definition of the term would prohibit Defendant Richard Slack from contacting companies who have turned down Plaintiff CraneTech's services; a red-flag for the Court. *See Prod. Action Int'l, Inc.*, 277 F. Supp. 2d at 923 (S.D. Ind. 2003) (citing *Young,* 449 N.E.2d at 304 ("…a covenant will not be enforced if its enforcement would be unreasonable under any set of facts.")). The term "targeted prospective customer" appears to be overbroad and is not an adequate substitute for a geographic restriction. And, when combined with the lack of geographic limit, makes the

restrictive covenant so overly broad and onerous that it would be an unreasonable restriction on Defendant Richard Slack's rights.

Because the customer-solicitation restrictive covenant has provisions which are unreasonable, the Court will again apply the "blue pencil" doctrine. Here, the customer base, and the geographic limit, or lack thereof, are unreasonable. If the term "targeted prospective customer" is stricken via the blue pencil doctrine, then Defendant Richard Slack would only be prohibited from soliciting actual customers of Plaintiff CraneTech regardless of their location. This still appears unreasonable to the Court, because the restrictive covenants for Plaintiff CraneTech, a services company, would normally be expected to be "localized because services generally are performed within a small geographic area." *See E.T. Prods., LLC.*, 872 F.3d at 468 (citing *Fogle*, 539 N.E.2d at 503).

If the Court applies the "blue pencil" doctrine to delete the unreasonable geographic provision, the issue is not remedied, because there remains a lack of geographic limit. *See William Bodemer & Innovative Bev. v. Swanel Bev.*, 884 F. Supp. 2d 717, 730-731 (N.D. Ind. 2012). It would appear the customer-solicitation restrictive covenant is both unreasonable and incapable of redaction, and therefore, it cannot be enforced. Plaintiff has not shown a likelihood of success on the merits on the claims arising under Section (b) of the restrictive covenants contained in the Employment Agreement.

Finally, the Court moves to Section (d), the non-disparagement restrictive covenants. As an initial matter, although the Court found that "Plaintiff CraneTech appears to have legitimate protectible interests to support the restrictive covenants in Sections (a)-(c)" the Court specifically excluded Section (d). The non-disparagement restrictions in Section (d) prohibit Defendants from making any negative comments to anyone about CraneTech or its affiliates. [DE 1-1, Page

59]. This does not appear, to this Court, to be necessary to protect the legitimate interests of CraneTech as Defendants' former employer.

As is their burden, Plaintiff CraneTech has not provided any argument, nor do they point this Court to any caselaw, where a non-disparagement clause this broad was necessary for the protection of a former employer. Plaintiff CraneTech only argues that each of the restrictive covenants in the Employment Agreement, including the non-disparagement clause, are necessary to protect its legitimate interest in its existing and prospective customer relationships, the goodwill resulting from these relationships, and its relationships with independent contractors and employees. [DE 3, Pages 19-20]. However, Plaintiff CraneTech fails to provide any specific argument as to *how* the non-disparagement restrictive covenant protects their legitimate business interests. Even if they had, a non-disparagement restrictive covenant preventing Defendants from making any negative comments to anyone about Plaintiff CraneTech or its affiliates is unreasonable. Therefore, the Court will not enforce it. Plaintiff has not shown a likelihood of success on the merits of claims arising under Section (d) of the restrictive covenants contained in the Employment Agreement.

In conclusion, Plaintiff CraneTech did not establish a likelihood of success on the claims involving Defendant Lisa Slack, so none of the restrictive covenants in the Employment will be enforced as to her. And, because Plaintiff CraneTech failed to establish a likelihood of success on the claims arising under Sections (b) and (d), those sections are unenforceable as to Defendant Richard Slack. However, Plaintiff CraneTech did establish a likelihood of success on the claims involving Sections (a) and (c) as to Defendant Richard Slack, so those claims will move to the next phase of the analysis: irreparable harm.

### c.  Irreparable Harm

Plaintiff CraneTech has established a likelihood of success on the merits as it relates to the claims arising under Sections (a) and (c) of the restrictive covenants contained in the Employment Agreement against Defendant Richard Slack. The next element Plaintiff CraneTech must satisfy is irreparable harm. Plaintiff CraneTech argues "[c]ourts consider the requirements of irreparable harm and no adequate remedy at law together." [DE 3, Page 16]. But, the Seventh Circuit has consistently articulated the test for a preliminary injunction as requiring both irreparable harm and an inadequate remedy at law.[5] For this reason, the Court will consider the two elements separately, beginning with irreparable harm.

Plaintiff CraneTech argues that the "nature of S[l]ack's breaches gives rise to irreparable harm, as the damages to CraneTech are difficult to quantify..." and cites three cases; each are inapposite. [DE 3, Pages 16-17]. First, in *Hess*, one of four founders in a movie-promotion firm violated her restrictive covenant by diverting business opportunities to the firm's rival and assisting the rival in setting up new offices. *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 632 (7th Cir. 2005). The court held that the harm to the firm was irreparable because "[c]ompetition changes probabilities" such that "[the firm] *will not be able to identify* which contracts slipped from its grasp." *Id.* at 632-33 (emphasis added). If proof of particular injuries

---

[5] *See Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) ("...show that: (1) without this relief, it will suffer 'irreparable harm'; (2) 'traditional legal remedies would be inadequate'; and..."); *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018) ("...show that: (1) without such relief, it will suffer irreparable harm before final resolution of its claims; (2) traditional legal remedies would be inadequate; and ..."); *Merritte v. Kessel*, 561 Fed. Appx. 546, 548 (7th Cir. 2014) ("... needed to show to the district court ... (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction."); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012) ("...demonstrate... (2) no adequate remedy at law; (3) irreparable harm absent the injunction"); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007) ("...moving party must demonstrate ... (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted."); *Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002) ("party seeking a preliminary injunction is required to demonstrate ... that it has no adequate remedy at law, and that it will suffer irreparable harm if the relief is not granted."); *Wisconsin Music Network v. Muzak Ltd. Partnership*, 5 F.3d 218, 221 (7th Cir. 1993) ("... movant must show... 2) the inadequacy of a remedy at law; and 3) the existence of irreparable harm without the injunction..."); *Kellas v. Lane*, 923 F.2d 492, 493 (7th Cir. 1990) (identifying the inadequacy of a remedy at law and the existence of irreparable harm has separate elements).

could be supplied, then the injury would be reparable by damages; it is precisely the difficulty of

pinning down what business has been or will be lost that makes an injury "irreparable." *Id*. But

here, where Plaintiff CraneTech's CEO, Mr. Factor, was able to readily identify both the

customers and employees who had left the company after Defendant Richard Slack was

terminated, and how much those losses cost the company, *Hess* does not appear on-point. *See*

[DE 33, Page 227] (Mr. Factor testifies to customers and revenue lost); [*Id*. at 228] (Mr. Factor

testifies to cost of each service technician lost); [*Id*. at 251] (Mr. Factor testifies to customers

lost); [*Id.* at 255] (Mr. Factor testifies to customers and revenue lost).

Next, citing *Turnell,* Plaintiff CraneTech argued "[t]he injuries that flow from the

violation of a non-compete are difficult to prove and quantify," so the Seventh Circuit considers

them a "canonical form of irreparable harm" for which "[i]njunctive relief is therefore the best,

and probably the only, adequate remedy." [DE 3, Page 17]; *see Turnell v. CentiMark Corp*., 796

F.3d 656, 666–67 (7th Cir. 2015). This, however, is only a partial quote. The full quote, with

emphasis added to the section omitted in their brief, is below.

> The potential damage to CentiMark, on the other hand, is a canonical
> form of irreparable harm. **The injuries that flow from the violation
> of a non-compete are difficult to prove and quantify. *See*
> CertainTeed, 481 F.3d at 529 ("[I]t may be very difficult to show
> that the ex-employee has used confidential information."); John
> G. Bryant Co. v. Sling Testing and Repair, Inc., 471 Pa. 1, 369
> A.2d 1164, 1167 (Pa. 1977) (characterizing such damage as
> "incalculable"). That is what makes restrictive covenants prime
> candidates for injunctive relief. Turnell's breaches, if left
> unchecked, might cause little harm to CentiMark, or they might
> cause great harm. But either way, the magnitude and even the
> existence of the injury will be difficult to discern.** Injunctive relief
> is therefore the best, and probably the only, adequate remedy.

*Turnell*, 796 F.3d at 666-67. First, it appears, at least to some degree, that the analysis was

impacted by allegations of theft of confidential information which made it difficult to quantify

the harm. *Id.* This makes it distinguishable from the case at bar, where there are no allegations that confidential information was taken or misused. More relevant here, even after Turnell appealed, and as the Seventh Circuit noted, "[n]either party ha[d] quantified" the harm to the former employer stemming from lost customer relationships and proprietary information, which provided no straightforward method to determine the financial harm; this satisfied irreparable harm. *Id.* at 666. But again, here, where Mr. Factor was able to provide detailed estimates regarding the losses incurred by the company when each customer or employee leaves, this case is distinguishable.

Finally, Plaintiff CraneTech cites *Aon Risk Servs. Companies, Inc. v. Alliant Ins. Servs., Inc.*, to again argue that because here the harms are difficult to qualify irreparable is satisfied. [DE 3, Page 17]; *Aon Risk Servs. Companies, Inc. v. Alliant Ins. Servs., Inc.*, 415 F. Supp. 3d 843, 852 (N.D. Ill. 2019). But because that case involved allegations that confidential information was taken which impacted the irreparable harm analysis, it too is distinguishable from the case at bar.

Plaintiff CraneTech also directs the Court to *DM Trans, LLC v. Scott*, which it finds instructive. [DE 3, Page 13]; *DM Trans, LLC v. Scott*, 38 F.4th 608, 619 (7th Cir. 2022). There, the Seventh Circuit upheld the district court's denial of a preliminary injunction because there was no irreparable harm. *Id.* In so doing, the Seventh Circuit rejected the idea that the employees' violations of restrictive covenants invariably qualify as irreparable harm to the former employer. *Id.* at 618. Instead, the court reasoned "harm stemming from lost customers or contracts may be quantifiable if the lost customers or contracts are identifiable." *Id.* (quoting *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021)). Ultimately, the Seventh Circuit pronounced the general rule that a district court is within its discretion to find no irreparable

harm where the company seeking injunctive relief can reasonably estimate the value of its lost profits. *Id.* at 620 (citing *Lawson Prod., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1440 (7th Cir. 1986); *see August Mack Env't, Inc. v. Treschow*, 2023 U.S. Dist. LEXIS 141228, at *4-6 (S.D. Ind. Aug. 14, 2023).

During the Preliminary Injunction hearing, Mr. Factor was asked how the loss of a technician affected Plaintiff CraneTech; he responded, "On average, somewhere between 4- to 500,000 of revenue a year as an estimate." [DE 33, Page 228:15-17]. When asked how he came to that number, Mr. Factor was very specific.

> It's a general rule of thumb for the industry; and if we looked at our books historically, that's roughly where it lands depending on the branch. If you look at just billable labor plus the –

[*Id.* at 267]. Mr. Factor was interrupted and asked to pull away from the mic; he continued:

> Sorry. If you look at our billable labor rates -- so our billable labor rates are, on average, $150 an hour. If you assume we bill 2,000 hours a year, that's $300,000. We typically have a 50/50 split between labor and materials in financial statements, so you'd add materials on top of that. I think 400- to 500,000 is potentially conservative.

[*Id.*].

Mr. Factor, the CEO of Plaintiff CraneTech, testified in detail as to the losses incurred by the company when each service technician or customer leaves. This indicates to the Court that the losses are both identifiable and quantifiable. Because plaintiff cannot establish both a likelihood of success on the merits and that he will suffer irreparable harm absent the injunction, "then the district court's analysis ends and the preliminary injunction should not be issued." *Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998) (citing *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)).

The Motion for Preliminary Injunction, as it relates to the claims arising under the restrictive covenants contained in the Employment Agreement is DENIED. The pending Temporary Restraining Order as it relates to the restrictive covenants contained in the Employment Agreement is LIFTED.

## II.    The Restrictive Covenants in the Asset Purchase Agreement

### a.    Likelihood of Success on the Merits: Legal Standards under Illinois Law

The Court will start by determining whether the restrictive covenants contained within the APA are reasonable and therefore enforceable. Here again, the enforceability of the restrictive covenants relates to the likelihood of success on the merits, because if the restrictive covenants are unreasonable and therefore unenforceable, there is no likelihood of success. *Advent Elecs. v. Buckman*, 1995 U.S. Dist. LEXIS 11696, at *20 (N.D. Ill. Aug. 11, 1995). If the plaintiff cannot establish both a likelihood of success on the merits and that he will suffer irreparable harm absent the injunction, "then the district court's analysis ends and the preliminary injunction should not be issued." *Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998) (citing *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)).

Enforceability of a restrictive covenant in Illinois is a question of law and "depends on the reasonableness of its terms." *W. Capra Consulting Grp., Inc. v. Snyder*, 2019 U.S. Dist. LEXIS 140692, at *22-23 (N.D. Ill. Aug. 20, 2019) (citing *Mohanty v. St. John Heart Clinic, S.C.*, 866 N.E.2d 85, 104 (Ill. 2006)). An employer seeking to enforce the restrictive covenant bears the burden of showing that the full extent of the restriction is necessary to protect its legitimate business needs. *Dent Wizard Int'l Corp. v. Andrzejewski*, 2021 Ill. App. Unpub. LEXIS 687, at *19 (Ill. App. Ct. 2021) (citing *Northwest Podiatry Ctr., Ltd. V. Ochwat*, 990 N.E.2d 347, 359 (Ill. App. Ct. 2013)).

These claims will be analyzed under Illinois law, per their choice of law provision. Restrictive covenants appear in employment contracts and contracts for the sale of a business alike. Although the language and effect of these two types of contracts may appear similar, in Illinois, courts evaluate these restrictive covenants differently. *Decker, Berta and Co., Ltd. v. Berta*, 587 N.E.2d 72, 74 (Ill. App. Ct. 1992) (citing Whitmore, 15 J. Corp. L. at 484 n.1). Courts view restrictive covenants ancillary to the sale of a business more leniently, partially because "a covenant ancillary to the sale of a business ensures the buyer that the former owner will not walk away from the sale with the company's customers and good will, leaving the buyer with an acquisition that turns out to be only chimerical." *Decker, Berta and Co.*, 587 N.E.2d at 75 (citing *Hamer Holding Group v. Elmore*, 560 N.E.2d 907, 916 (Ill. App. Ct. 1990)).

Restrictive covenants ancillary to the sale of a business are permitted if they are "reasonable as to time, geographical area and scope of prohibited business activity." *Aquila Inv. Grp., LLC v. Hiller*, 2019 U.S. Dist. LEXIS 246392, at *37 (C.D. Ill. May 31, 2019) (quoting *Cent. Water Works Supply, Inc. v. Fisher*, 608 N.E.2d 618, 621 (Ill. App. Ct. 1993)); *see Decker*, 587 N.E.2d at 75 (citing *Hamer*, 560 N.E.2d at 915). Before the Court may analyze the terms of a restrictive covenant ancillary to the sale of a business, however, the purchaser must first show a protectable business interest. *Decker*, 587 N.E.2d at 75.

Where the terms are unreasonable, under Illinois law a court has discretion to apply the blue pencil doctrine to modify the unreasonable terms of covenant in order to make it reasonable. *League Corp. v. Khan*, 2025 U.S. Dist. LEXIS 86078, at *17 (N.D. Ill. May 6, 2025); *see Admiin Inc. v. Kohan*, 2023 U.S. Dist. LEXIS 124147, at *25 (N.D. Ill. July 19, 2023). However, courts do not modify a restrictive covenant where such a modification would essentially rewrite the contract or where the degree of unreasonableness of the restrictive covenant, as written, makes a

26

rewriting of that provision unfair. *League Corp.*, 2025 U.S. Dist. LEXIS 86078, at \*17; *see LKQ Corp. v. Rutledge*, 96 F.4th 977, 983 (7th Cir. 2024) ("Illinois courts 'refuse to modify an unreasonable restrictive covenant . . . where the degree of unreasonableness renders it unfair.'" (citation omitted)).

### b. Application of Illinois Law to the Restrictive Covenants in the Asset Purchase Agreement

Moving to the analysis of the restrictive covenants in the Asset Purchase Agreement, Plaintiff CraneTech first argued that restrictive covenants in Illinois should be found reasonable without any analysis by the courts because the parties consented to them. [DE 3, Page 22]; *see Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 634 (7th Cir. 2005). The full quote, with emphasis added to the section omitted in their brief, is below.

> An agreement ex ante among the entrepreneurs that these covenants do fit their needs, and that they have received sufficient benefits in exchange for the restraints, is the sort of exchange that any jurisdiction must enforce **if it wants to promote the formation and success of new businesses**. Illinois has given no indication that it would refuse to enforce an entrepreneur's acknowledgment that a given covenant is reasonable.

*Hess*, 415 F.3d at 634. *Hess* does not generally stand for the proposition that when the parties consent to restrictive covenants the Court is relieved of its duty to analyze their reasonableness and "must enforce" them. A quick read of the case makes clear that the court approved of the restrictive covenants without a reasonability analysis in *Hess* because the court had identified an analogous case which "approved language that is all but identical to the text Owens signed." *Id.*

Here, Plaintiff CraneTech has presented this Court with no such analogous case for the restrictive covenants at issue. And, even if they had, again, *Hess* is distinguishable. As briefly discussed above, four veterans of the motion-picture promotion business decided to form a

singular organization, where each of the original four held an equal share, 22.5%, of the stock (a

fifth investor received 10%). Here, Defendants sold their business to potential competitors and

joined the new company as employees, not as partners in a joint venture. *Hess*, 415 F.3d at 631.

For these reasons, this Court does not find *Hess* analogous to the case at bar, and will instead

proceed to a full analysis on reasonability.

   The Court will begin its analysis with the language of the restrictive covenants in the

Asset Purchase Agreement, which is below.

> <u>Seller Party Restrictive Covenants.</u> For a period of two (2) years following the Closing Date (the <u>"Restricted Period"),</u> each Seller Party shall not, and shall not permit, cause, or encourage any other Person (including any affiliate, representative, and/or family member of any of the Seller Parties) to, directly or indirectly, (i) engage in or assist others in engaging in, or undertake any planning to engage in, all or any portion of the Business or any business that is competitive with all or any portion of the Business (the <u>"Restricted Business")</u> within 200 miles of Valparaiso, Indiana (the <u>"Buyer Territory");</u> (ii) have an interest in any Person that engages or plans to engage, directly or indirectly, in the Restricted Business in the Buyer Territory in any capacity, including as a partner, equity holder, member, employee, principal, agent, trustee, consultant, or otherwise; (iii) cause, induce, or encourage any actual or prospective client, customer, vendor, or supplier in the Buyer Territory (including any existing or former client, customer, vendor, or supplier of Seller and any Person in the Buyer Territory that becomes a client, customer, vendor, or supplier of Buyer after the Closing) to terminate or modify any such actual or prospective relationship; (iv) employ, hire, engage, or solicit, or receive or accept the performance of services by, any employee, consultant, or independent contractor of the Business who was such at any time within the two (2) year period immediately preceding and including the Closing Date, or in any other manner persuade or attempt to persuade any such Person to terminate or diminish his, her, or its relationship with the Business, the Buyer, or any of its affiliates in the Buyer Territory; (v) cause, solicit, induce, or encourage any employee, consultant, or independent contractor of the Business to leave such employment or terminate or modify its relationship with the Business, Buyer,

or any of its affiliates; (vi) knowingly or intentionally take any action that would diminish the value of or interfere with Buyer, the Business, or the Purchased Assets after the Closing; (vii) or disparage, criticize, or make any negative or uncomplimentary statements regarding or with respect to Buyer or its affiliates, or the Business, management, products, or services of any of them; and (viii) none of the Seller Parties will otherwise do or say anything that could reasonably be expected to disrupt the good morale of employees of Seller, Buyer, or any of their respective affiliates or harm the interests or reputation of Se1ler, Buyer, or any of their respective affiliates or the Business.

[DE 3-1, Page 29].

To enforce a restrictive covenant ancillary to the sale of a business, the purchaser must first show a legitimate business interest. *Decker*, 587 N.E.2d at 75. Plaintiff CraneTech argues that the restrictive covenants in the APA protect their legitimate interest in customer and employee goodwill and relationships. [DE 3, Page 25]. Defendants, citing *Reliable Fire*, respond that Plaintiff CraneTech cannot establish a legitimate business interest because Defendants did not have a "near-permanent" relationship with customers and because there's no evidence Defendants ever used Plaintiff CraneTech's confidential information for his personal benefit. [DE 38, Pages 27-28]; *see Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 402 (Ill. 2011).

The Illinois Supreme Court held in *Reliable Fire* that the two-factor test focused on the "near-permanent customer relationship" and use of confidential information was no longer valid, and instead, found that whether a legitimate business interest exists is based on the totality of the facts and circumstances. *Reliable Fire*, 965 N.E.2d at 403. Here, Plaintiff CraneTech asserted that the goodwill transferred from seller to buyer is a legitimate business interest subject to protection by restrictive covenants. [DE 3, Page 25]. Caselaw supports this: in the context of a sale of a business, the covenant protects the goodwill that is transferred to the purchaser of the

business. *Aquila Inv. Grp.*, 2019 U.S. Dist. LEXIS 246392, at *36-37 (citing *Eichmann v. National Hosp. and Health Care Services, Inc*., 719 N.E.2d 1141, 1146 (Ill. App. Ct. 1999). This Court agrees with Plaintiff CraneTech, and finds they have established a legitimate business interest for the purposes of the restrictive covenants in the Asset Purchase Agreement.

Having established a legitimate business interest, the Court will now analyze the provisions of the restrictive covenants. Beginning with the two-year time limit, restrictive covenants should be limited to the time it takes the buyer to make the sellers' good will its own. *Advent Elecs.*, 1995 U.S. Dist. LEXIS 11696, at *23 (citations omitted). Durations of two years and more have been upheld as reasonable. *Id.; see Business Records Corp. v. Lueth*, 981 F.2d 957, 961 (7th Cir. 1992) (2-year limit is reasonable); *Hamer*, 560 N.E.2d at 917 (3-year limit is reasonable). The Court finds that the two-year limitation is reasonable.

As to geographic limits, restrictive covenants "can cover only that territory to which the good will extends." *Advent Elecs.*, 1995 U.S. Dist. LEXIS 11696, at *21 (citing *Russell v. Jim Russell Supply, Inc.*, 558 N.E.2d 115, 123 (Ill. Ct. App. 1990)). Plaintiff CraneTech argues that 200 miles is the geographic scope of customers which Defendants formerly served and that Plaintiff CraneTech will now serve having purchased the business from Defendants. [DE 3, Page 24]. Defendants contest the 200-mile radius and argue its unsupported by testimony or evidence that Plaintiff CraneTech's Valparaiso business extended "even close to such a distance." [DE 38, Page 28]. Courts view restrictive covenants ancillary to the sale of a business more leniently, partially because "a covenant ancillary to the sale of a business ensures the buyer that the former owner will not walk away from the sale with the company's customers and good will, leaving the buyer with an acquisition that turns out to be only chimerical." *Decker, Berta and Co.*, 587

N.E.2d at 75 (citing *Hamer*, 560 N.E.2d at 916). For this reason, the Court finds the geographic scope to be reasonable.

Finally, the Court will analyze the activity prohibitions. While the Court takes no issues with provisions (iii) through (viii), the Court has concerns about provisions (i) and (ii). The language of those provisions is below.

> …each Seller Party shall not, and shall not permit, cause, or encourage any other Person (including any affiliate, representative, and/or family member of any of the Seller Parties) to, directly or indirectly, (i) engage in or assist others in engaging in, or undertake any planning to engage in, all or any portion of the Business or any business that is competitive with all or any portion of the Business (the "Restricted Business") within 200 miles of Valparaiso, Indiana (the "Buyer Territory"); (ii) have an interest in any Person that engages or plans to engage, directly or indirectly, in the Restricted Business in the Buyer Territory in any capacity, including as a partner, equity holder, member, employee, principal, agent, trustee, consultant, or otherwise…

[DE 3-1, Page 29]. Plaintiff CraneTech, who has the burden here, provided very little, if any, argument in their briefing regarding the substantive provisions of the restrictive covenants; there was no discussion of them at the Preliminary Injunction hearing.

Regarding provision (i), it is not only unclear to this Court what the meaning of "undertake any planning to engage in" is, but it is also unclear why that is necessary for the protection of Plaintiff CraneTech's legitimate business interest: customer and employee goodwill and relationships. [*See* DE 3, Page 25]. Similarly, moving to provision (ii), the Court has no indication of what having "an interest in any Person that engages or plans to engage, directly or indirectly," is or means, and how that protects Plaintiff CraneTech's purchase of goodwill. Both provisions seem unreasonable. *Id.* For these reasons, the Court will employ its discretion to modify those two provisions. *See League Corp. v. Khan*, 2025 U.S. Dist. LEXIS 86078, at *17.

In provision (i), the Court strikes the phrase "or undertake any planning to engage in".

Provision (ii) is struck in its entirety. The now enforceable, blue-penciled APA restrictive

covenant is below.

> <u>Seller Party Restrictive Covenants.</u> For a period of two (2) years following the Closing Date (the "Restricted Period"), each Seller Party shall not, and shall not permit, cause, or encourage any other Person (including any affiliate, representative, and/or family member of any of the Seller Parties) to, directly or indirectly, (i) engage in or assist others in engaging in all or any portion of the Business or any business that is competitive with all or any portion of the Business (the "Restricted Business") within 200 miles of Valparaiso, Indiana (the "Buyer Territory"); (iii) cause, induce, or encourage any actual or prospective client, customer, vendor, or supplier in the Buyer Territory (including any existing or former client, customer, vendor, or supplier of Seller and any Person in the Buyer Territory that becomes a client, customer, vendor, or supplier of Buyer after the Closing) to terminate or modify any such actual or prospective relationship; (iv) employ, hire, engage, or solicit, or receive or accept the performance of services by, any employee, consultant, or independent contractor of the Business who was such at any time within the two (2) year period immediately preceding and including the Closing Date, or in any other manner persuade or attempt to persuade any such Person to terminate or diminish his, her, or its relationship with the Business, the Buyer, or any of its affiliates in the Buyer Territory; (v) cause, solicit, induce, or encourage any employee, consultant, or independent contractor of the Business to leave such employment or terminate or modify its relationship with the Business, Buyer, or any of its affiliates; (vi) knowingly or intentionally take any action that would diminish the value of or interfere with Buyer, the Business, or the Purchased Assets after the Closing; (vii) or disparage, criticize, or make any negative or uncomplimentary statements regarding or with respect to Buyer or its affiliates, or the Business, management, products, or services of any of them; and (viii) none of the Seller Parties will otherwise do or say anything that could reasonably be expected to disrupt the good morale of employees of Seller, Buyer, or any of their respective affiliates or harm the interests or reputation of Se1ler, Buyer, or any of their respective affiliates or the Business.

The Court finds this modified restrictive covenant to be reasonable, and therefore enforceable against both Defendants. For this reason, Plaintiff CraneTech has shown a likelihood of success on the merits as it relates to the claims arising under the modified restrictive covenants in the Asset Purchase Agreement, as shown above.

### c. Irreparable Harm

The next element Plaintiff CraneTech must satisfy is irreparable harm. As an initial matter, the Court notes that there is a provision stipulating to irreparable harm in the restrictive covenants. [DE 3-1, Page 30]. However, courts "characteristically hold that [such stipulations] alone are insufficient to support a finding of irreparable harm and an award of injunctive relief." *New Sunshine LLC v. Gallagher*, 2015 U.S. Dist. LEXIS 72225, at *3 (S.D. Ind. June 4, 2015) (citing *Domino Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004) (While courts have given weight to parties' contractual statements regarding the nature of harm and attendant remedies that will arise as a result of a breach of a contract, they nonetheless characteristically hold that such statements alone are insufficient to support a finding of irreparable harm and an award of injunctive relief.))

Having already addressed Plaintiff CraneTech's arguments as they relate to irreparable harm, the Court will not repeat the full analysis here. Plaintiff CraneTech argues that the "nature of S[l]ack's breaches gives rise to irreparable harm, as the damages to CraneTech are difficult to quantify…". [DE 3, Pages 16-17]. But again, the Court finds *DM Trans, LLC v. Scott* instructive. 38 F.4th 608 (7th Cir. 2022). Because Mr. Factor testified in detail as to the losses incurred by Plaintiff CraneTech when each service technician or customer leaves, the losses appear to this Court to be identifiable and quantifiable such that the harm is not irreparable. Because plaintiff cannot establish both a likelihood of success on the merits and that he will suffer irreparable

harm absent the injunction, "then the district court's analysis ends and the preliminary injunction should not be issued." *Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998) (citing *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)).

The Motion for Preliminary Injunction, as it relates to the claims arising under the restrictive covenants contained in the Asset Purchase Agreement is DENIED. The pending Temporary Restraining Order as it relates to the restrictive covenants contained in the Asset Purchase Agreement is LIFTED.

## **CONCLUSION**

Having reviewed the briefing on both the Motion to Dismiss, [DE 26], and the Motion for Preliminary Injunction, [DE 2], and having considered testimony from the hearing, both are denied in their entirety. The Temporary Restraining Order, in its entirety, is LIFTED.

SO ORDERED.

ENTERED: June 25, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court